## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGEL RIVERA, | : | |
| **Plaintiff** | : | |
| | : | **No. 1:22-cv-00233** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| ARIANNA DEMPSEY, CRNP <u>et al.</u>, | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Currently pending before the Court is Defendant Arianna Dempsey, CRNP ("Dempsey")'s motion to dismiss the amended complaint and/or for summary judgment, filed pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. (Doc. No. 16.) For the reasons that are set forth below, the Court will deny the motion in its entirety.

## I.   BACKGROUND

### A.   Procedural Background

<u>Pro se</u> Plaintiff Angel Rivera ("Plaintiff"), who is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State Correctional Institution Rockview ("SCI Rockview") in Bellefonte, Pennsylvania. On February 17, 2022, he commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights while incarcerated at State Correctional Institution Frackville ("SCI Frackville") in Frackville,

Pennsylvania. (Doc. No. 1.) On that same date, he also filed a motion for leave to proceed in forma pauperis, as well as his prisoner trust fund account statement. (Doc. Nos. 2, 3.) On March 9, 2022, the Court granted Plaintiff's motion to proceed in forma pauperis, directed the Clerk of Court to serve a copy of the complaint upon the named Defendants, and requested that the named Defendants waive service pursuant to Federal Rule of Civil Procedure 4(d). (Doc. No. 7.) After the Court issued that Order, Plaintiff filed an amended complaint. (Doc. No. 13.)

In his amended complaint, Plaintiff has named the following individuals as defendants, all of whom appear to have worked at SCI Frackville during the period of time relevant to his claims: (1) Defendant Dempsey, a Certified Registered Nurse Practitioner; (2) Stephen Donahue, a Licensed Psychologist Manager; (3) Robert Boyce, a Psychological Service Specialist; (4) Shawn Kephart, the Deputy Superintendent of Centralized Services; and (5) Nathan D. Wynder, the Deputy Superintendent of Facility Management. (Id. at 1, 2.)

On May 2, 2022, counsel entered an appearance on behalf of Defendant Dempsey and, shortly thereafter, filed a motion to dismiss Plaintiff's amended complaint, along with a supporting brief and various exhibits.[1] (Doc. Nos. 16, 17.)

---

[1] After Defendant Dempsey filed her motion to dismiss, Plaintiff requested that the Court correct the spelling of her name, as well as her professional title. (Doc. No. 18.) The Court granted Plaintiff's request and directed the Clerk of Court to update the docket to reflect these changes. (Doc. No. 21 (changing Defendant "Dr. Dempsey, PCRNP" to Defendant "Arianna Dempsey, CRNP").)

In addition, Defendant Dempsey also filed a motion to stay discovery pending the Court's resolution of her motion to dismiss.  (Doc. No. 22.)

On July 14, 2022, the Court, after reviewing Defendant Dempsey's motion to dismiss, observed that she was asserting, in part, that Plaintiff failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e.  (Doc. No. 26.)  Thus, the Court, finding that exhaustion of Plaintiff's administrative remedies is at issue and thus requires consideration of matters outside of the pleadings, converted Defendant Dempsey's motion to dismiss into a motion for summary judgment.  (Id.)  In doing so, the Court placed the parties on notice that it would consider the issue of exhaustion in its role as a fact-finder, and the Court set forth a briefing schedule for Defendant Dempsey's converted motion for summary judgment.  (Id.)  The Court also granted Defendant Dempsey's motion to stay discovery in this action pending disposition of her motion for summary judgment based upon Plaintiff's alleged failure to exhaust.

On August 17, 2022, Defendant Dempsey filed her brief in support of her converted motion for summary judgment, statement of material facts, and exhibits. (Doc. No. 29.)  Plaintiff has filed briefs in opposition to Defendant Dempsey's motion, as well as a responsive statement of material facts and exhibits (Doc. Nos. 25, 30, 31, 32), to which Defendant Dempsey has filed a reply brief (Doc. No. 33).

### B.   Factual Background[2]

Plaintiff, a state prisoner in the custody of the DOC, alleges that he suffers from serious mental illness (Doc. No. 13 ¶¶ 4, 12) and that all events giving rise to his claims occurred while he was incarcerated at SCI Frackville (id. ¶ 13).  Plaintiff alleges that Defendant Dempsey is a psychiatric certified nurse practitioner who was assigned to his caseload while he was incarcerated at SCI Frackville.  (Id. ¶ 6.)

Plaintiff asserts that between the dates of July 29, 2020, and March 8, 2021, he suffered "[s]ignificant [f]unctional [i]mpairments" associated with his "[s]erious [m]ental [i]llness" and engaged in over a dozen incidents of self-harm, including a hunger strike, self-mutilation, and "numerous" suicide attempts.  (Id. ¶ 14.)  Plaintiff further asserts that, due to his extensive history of self-harm, suicide attempts, and hospitalizations, "ALL" defendants, as of March 8, 2021, were aware or should have been aware of his vulnerability to self-harm and suicide.  (Id. ¶ 15.)

In addition, Plaintiff alleges that, on March 8, 2021, after spending seventeen (17) days in a Psychiatric Observation Cell ("PO cell"), Defendant Dempsey assessed Plaintiff for a potential discharge.  (Id. ¶ 16.)  Plaintiff alleges that Defendant Dempsey informed him that she was aware of his vulnerabilities to self-

---

[2]  Because this Memorandum and accompanying Order resolves Defendant Dempsey's pending motion to dismiss and/or for summary judgment, the Court will set forth only the facts and claims that are relevant to her.  Defendant Dempsey's co-defendants will be addressed by separate order.

harm and suicide, but that she needed his PO cell for other prisoners.  (Id. ¶ 17 (alleging that Defendant Dempsey further stated that Plaintiff should have never been housed in a PO cell for seventeen (17) days and that he should have been referred to a mental health unit).) As a result, Plaintiff alleges that Defendant Dempsey, who "was now taking his case load[,]" determined that she needed to either discharge him from the PO cell or refer him to a mental health unit, because he had been in a PO cell for over seventy-two (72) hours, which is contrary to "policy and procedure[.]" (Id. ¶ 18.)  Plaintiff alleges that he informed Defendant Dempsey that he was having suicidal thoughts and that, if he were released back into the restricted housing unit ("RHU"), "he would most definitely find a way to kill himself." (Id. ¶ 19.)  Plaintiff claims, however, that Defendant Dempsey authorized and/or supported his discharge from the PO cell anyway.  (Id. ¶ 21.)

Plaintiff asserts that, after he was discharged from the PO cell, he was placed in the RHU, unsupervised and without any form of protection from self-harm.  (Id. ¶ 22.) Plaintiff alleges that he complained to Lt. Motto that he had informed Defendant Dempsey of his suicidal thoughts, yet he was still discharged from the PO Cell.  (Id. ¶ 23.)  Plaintiff further alleges that, between March 8, 2021, and April 12, 2021, he took several steps in an attempt to be placed back in the PO cell, including filing a mental health abuse allegation, a DC-135A Inmate Request to Staff form, and grievance number 924093.  (Id. ¶ 26.)  Plaintiff also alleges that he

continued to make verbal complaints to Defendant Dempsey's co-defendants.  (Id. ¶¶ 27-33, 35-36.)

As a result of the foregoing, and because he had been refused mental health treatment from "prison officials[,]" Plaintiff asserts that, on May 7, 2021, he ingested an aluminum razor and over two (2) dozen psychotropic pills in an attempt to kill himself.  (Id. ¶ 37.)  Plaintiff further alleges that he was transported by ambulance to Pottsville Hospital (id. ¶38), but that, due to the seriousness of the situation, he needed to be transported to Lehigh Valley Cedar Crest Hospital in Allentown, Pennsylvania in order to undergo surgery to remove the razor and flush the drugs from his system (id. ¶ 39).  Plaintiff claims, however, that hospital officials were unsuccessful in removing the razor from his stomach and, thus, he was discharged from the hospital.  (Id. ¶ 41.)  Plaintiff further claims that, on May 10, 2021, he was returned to the hospital, where he received pain medication and medical observation for several days before the razor passed.  (Id. ¶ 43.)

Plaintiff alleges that, on or about May 13, 2021, he was transferred back to SCI Frackville and placed in a "T-cell" until he was sent to SCI Rockview.  (Id. ¶ 44.)  Plaintiff claims that, while he was housed in the "T-cell" at SCI Frackville, he was "deprived of writing material[ ] and grievances for security purposes up until about May 17, 2021[, when] he was given one grievance and a flex pen."  (Id. ¶ 45.)

Plaintiff alleges that, on May 18, 2021, he filed grievance number 929650, regarding the allegations in this lawsuit.  (Id. ¶ 46.)  Plaintiff claims that, although he attempted to exhaust his administrative remedies, his attempts "were thwarted by prison officials when they refused to file his [g]rievances[ and/or] [g]rievance [a]ppeals."  (Id. ¶ 56; id. ¶¶ 48-55 (containing various allegations concerning the attempts he made to exhaust his administrative remedies).)

In connection with all of these allegations, Plaintiff asserts an Eighth Amendment claim against Defendant Dempsey based upon (a) her deliberate indifference to his serious medical needs and (b) her failure to prevent his self-harm. (Id. at ¶ 58, 62.)  In support, Plaintiff alleges that Defendant Dempsey was deliberately indifferent to his serious medical needs for continued psychiatric observation status when she discharged him from the PO cell (id. ¶ 58) and that she failed to "take adequate precautionary steps necessary . . . to prevent Plaintiff . . . from self-harm . . . . " (id. ¶ 64).  As for relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.  (Id. ¶¶ 68-71.)  And, finally, Plaintiff also makes a demand for a jury trial.  (Id. ¶ 73.)[3]

---

[3]   Although Defendant Dempsey has liberally construed Plaintiff's amended complaint as asserting a conspiracy claim against both her and co-defendant Donahue, the Court does not read the amended complaint the same way.  (Doc. No. 13.)  Moreover, in Plaintiff's briefing, he specifically states that his amended complaint sets forth Eighth Amendment claims. (Doc. Nos. 25, 30.)  Plaintiff raises no arguments, however, concerning any conspiracy claims.

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(6)

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   And a claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court "accept[s] as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them."  See Taksir v. Vanguard Grp., 903 F.3d 95, 96-97 (3d Cir. 2018) (citation and internal quotations omitted).   The court also construes the factual allegations "in the light most favorable to the plaintiff[.]"  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010) (citation and internal quotations omitted).   The court, however, is not required to credit "conclusions of law" or to draw "unreasonable factual inferences."  See Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 133 (3d Cir. 2006).

Additionally, the United States Court of Appeals for the Third Circuit has outlined a three-step process to determine whether a complaint meets the pleading standard established by <u>Twombly</u> and <u>Iqbal</u>.  <u>See</u> <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 787 (3d Cir. 2016).  First, the court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'"  <u>See</u> <u>id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 675) (alterations in original).  Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  <u>See</u> <u>id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).  And, third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  <u>See</u> <u>id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).

## B.    Federal Rule of Civil Procedure 56

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  <u>See</u> Fed. R. Civ. P. 56(a).  "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law."  <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  And, a disputed material fact is "genuine . . . [i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]"  <u>See</u>

Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991) (citing Anderson, 477 U.S. at 248).

A party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party's burden "may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case."  See id. at 325.

Once the moving party has met its initial burden, the burden shifts to the nonmoving party, who may not rest upon the unsubstantiated allegations or denials of its pleadings and, instead, must go beyond its pleadings, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show a genuine dispute of material fact.  See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324.  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial[,]" summary judgment is proper.  See id. at 322. Summary judgment is also proper if the nonmoving party provides evidence that is

"merely colorable" or that "is not significantly probative[.]"  See Gray, 957 F.2d at 1078.

In addition, when deciding a motion for summary judgment, "the court must view all evidence and draw all inferences in the light most favorable to the non-moving party[.]"  See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008) (citing Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006)); M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 125 (3d Cir. 2020) (stating that, when reviewing a motion for summary judgment, courts are to "view the evidence in the light most favorable to the non-moving party").

## III.  DISCUSSION

### A.  Defendant Dempsey's Motion for Summary Judgment

The Court first addresses what it deems to be Defendant Dempsey's threshold argument—that Plaintiff failed to exhaust available administrative remedies at SCI Frackville before commencing this lawsuit.  As already set forth above, it was this exhaustion argument that caused the Court to issue its July 14, 2022 Order, which informed the parties that it would be considering the issue of administrative exhaustion in the context of a motion for summary judgment and that, by doing so, it would review matters outside of the pleadings in its role as factfinder.  (Doc. No. 26.)  Thus, unlike Defendant Dempsey's other arguments, which will be assessed against standards governing a motion to dismiss, this exhaustion argument will be

assessed against standards governing a motion for summary judgment.  That being said, the Court now turns to the legal principles governing exhaustion.

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement mandates that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  See 42 U.S.C. § 1997e(a) (emphasis added).  Exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding his prison conditions.  See Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford, 548 U.S. at 85)); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)); Booth v. Churner, 532 U.S. 731, 733-34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

As stated above, proper exhaustion under the PLRA "mean[s] 'complet[ing] the administrative review process in accordance with the applicable procedural

rules.'" See Downey, 968 F.3d at 305 (quoting Woodford, 548 U.S. at 88).  And the applicable "procedural rules are supplied by the individual prisons."   See id. (citations omitted); Spruill, 372 F.3d at 222 (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ." ).  A prisoner's failure to follow these procedural rules will result in a procedural default of the claims, thus barring the prisoner from bringing suit in federal court.  See id. at 227-32; Scott v. CO Smoke, No. 19-cv-01387, 2019 WL 7163465, at *2 (M.D. Pa. Dec. 20, 2019) (stating that prisoners "who fail to fully, or timely, complete the prison grievance process . . . are barred from subsequently litigating claims in federal court" (citing Spruill, 372 F.3d 218)).

A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him.  See Rinaldi v. United States, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting Woodford, 548 U.S. at 93)).  "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation.'"   Downey, 968 F.3d at 305 (quoting Shifflett,

934 F.3d at 365).

Failure to exhaust available administrative remedies is an affirmative defense.

See Jones, 549 U.S. at 216.  Accordingly, "[t]he burden to plead and prove failure

to exhaust as an affirmative defense rests on the defendant."  See Rinaldi, 904 F.3d

at 268 (citation omitted).  However, "once the defendant has established that the

inmate failed to resort to administrative remedies, the onus falls on the inmate to

show that such remedies were unavailable to him."  See id.

Finally, requiring a prisoner to exhaust available administrative remedies

before filing suit in federal court advances the policy justifications of the PLRA—

to "return[ ] control of the inmate grievance process to prison administrators,

encourage[ ] the development of an administrative record, and perhaps settlements,

within the inmate grievance process, and reduc[e] the burden on the federal courts

by erecting barriers to frivolous prisoner lawsuits."  See Downey, 968 F.3d at 305

(citation and internal quotation marks omitted) (alterations added)); Jones, 549 U.S.

at 204 (explaining that the exhaustion requirement "allows prison officials an

opportunity to resolve disputes concerning the exercise of their responsibilities

before being haled into court").

### 1. Statement of Material Facts

Under the Court's Local Rules, a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." See M.D. Pa. L.R. 56.1.  In addition, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in [the moving party's statement], as to which [the non-moving party] contend[s] that there exists a genuine issue to be tried." See id.  All material facts set forth in the moving party's statement "will be deemed to be admitted unless controverted by [the non-moving party's statement]." See id.

Here, in accordance with the Court's Local Rules, Defendant Dempsey filed a statement of material facts in support of her motion for summary judgment on the limited issue of exhaustion (Doc. No. 29-1), and Plaintiff filed a responsive statement of material facts (Doc. No. 31).  Thus, from the parties' statements and the underlying evidence in the record, the Court has culled the following material facts.

a.     **DOC's Grievance Policy**

The DOC maintains a grievance system policy which sets out a three (3) step grievance and appeals process that is available to inmates incarcerated within the DOC.  (Doc. No. 29-1 ¶ 5; Doc. No. 31 ¶ 5.)  Department policy DC-ADM 804 is the DOC's Consolidated Inmate Grievance Review System.  (Id.)  Under DC-ADM 804, an inmate must submit a grievance to the Facility Grievance Coordinator within fifteen (15) days of the date of the event upon which the claim is based.  (Doc. No. 29-1 ¶ 6; Doc. No. 31 ¶ 6.)  The grievance must be legible and include a statement of facts and identify all individuals involved in the alleged event.  (Doc. No. 29-1 ¶ 7; Doc. No. 31 ¶ 7.)  Grievances based upon separate events must be filed separately. (Doc. No. 29-1 ¶ 8; Doc. No. 31 ¶ 8.)  Any event or issue that has already been addressed by a previous grievance, or is currently being addressed by a pending grievance, cannot be re-addressed by an inmate filing another grievance.  (Doc. No. 29-1 ¶ 9; Doc. No. 31 ¶ 9.)  An inmate can appeal an initial review response to the Facility Manager within fifteen (15) days from the initial review. (Doc. No. 29-1 ¶ 10; Doc. No. 31 ¶ 10.)  An inmate can appeal the decision of the Facility Manager by submitting an Inmate Appeal to Final Review within fifteen (15) days of the Facility Manager's decision.  (Doc. No. 29-1 ¶ 11; Doc. No. 31 ¶ 11.)  The Final Review is completed by the Secretary's Office of Inmate Grievances and Appeals (hereinafter "SOIGA").  (Doc. No. 29-1 ¶ 12; Doc. No. 31 ¶ 12.)

### b.    Plaintiff's Relevant Grievance History

On April 11, 2022, counsel for Defendant Dempsey subpoenaed from SOIGA a full and complete copy of any and all grievances received by that office pertaining to Plaintiff.  (Doc. No. 29-1 ¶ 13; Doc. No. 31 ¶ 13.) Pursuant to that subpoena, SOIGA produced one Grievance—i.e., grievance number 957739.  (Doc. No. 29-1 ¶ 14; Doc. No. 31 ¶ 14.)  In grievance number 957739, Plaintiff alleged that he was fired from his job on the Behavioral Management Unit at SCI Rockview (where he was transferred following the events complained of in his amended complaint) in retaliation for filing grievances against various staff members on that Unit.  (Doc. No. 29-1 ¶ 15; Doc. No. 31 ¶ 15.)

Grievance number 957739, the only grievance fully appealed to SOIGA, does not in any way relate to Defendant Dempsey or the events complained of in Plaintiff's amended complaint.  (Doc. No. 29-1 ¶ 16; Doc. No. 31 ¶ 16.)  Grievance number 957739 concerns events which took place at SCI Rockview, several months after the incidents complained of in this lawsuit.  (Doc. No. 29-1 ¶ 17; Doc. No. 31 ¶ 17.)

On July 21, 2022, counsel for Defendant Dempsey served a subpoena on the grievance coordinator at SCI Frackville to obtain more documents regarding the complete content and appeal history of each grievance Plaintiff filed while housed there.  (Doc. No. 29-1 ¶ 18; Doc. No. 31 ¶ 18.)  In response, SCI Frackville produced

a spreadsheet listing Plaintiff's grievances. (Doc. No. 29-1 ¶ 19; Doc. No. 31 ¶ 19.) SCI Frackville also produced copies of sixty-nine (69) grievances filed by Plaintiff during his incarceration there. (Doc. No. 29-1 ¶ 20; Doc. No. 31 ¶ 20.) These grievances discuss a variety of issues related to Plaintiff's prison life, including his conditions of confinement, religious practice, and mail; however, only sixteen (16) relate to Plaintiff's healthcare or mental health treatment in any respect. (Doc. No. 29-1 ¶ 21; Doc. No. 31 ¶ 21.) Of the sixteen (16) grievances related to Plaintiff's medical and/or mental health care, only two (2)—grievance numbers 922003 and 929650—mention Defendant Dempsey. (Doc. No. 29-1 ¶ 22; Doc. No. 31 ¶ 22.)

Grievance number 922003 mentions Defendant Dempsey and tangentially concerns Plaintiff's mental health treatment—i.e., he grieves a 90-day razor restriction he was placed on as a result of ongoing self-injurious behavior. (Doc. No. 29-1 ¶ 23; Doc. No. 31 ¶ 23.) This grievance was filed on March 30, 2021, months prior to the dates of the events complained of in his amended complaint. (Doc. No. 29-1 ¶ 24; Doc. No. 31 ¶ 24.) Further, this grievance was rejected and never appealed. (Doc. No. 29-1 ¶ 25; Doc. No. 31 ¶ 25.)

Grievance number 929650 is the only grievance filed by Plaintiff that is remotely related to the claims in this case. (Doc. No. 29-1 ¶ 26; Doc. No. 31 ¶ 26.) Plaintiff filed grievance number 929650 regarding his alleged suicide attempt at SCI Frackville, identifying Defendant Dempsey and all other Defendants to this action

for failure to protect him from self-harm, failure to provide adequate mental health treatment, negligence, and deliberate indifference to his serious medical needs. (Doc. No. 29-1 ¶ 27; Doc. No. 31 ¶ 27.)  In his amended complaint, Plaintiff alleges, inter alia, that his attempts to appeal grievance number 929650 were "thwarted" by prison officials at SCI Frackville when they "refused to file his grievances."  (Doc. No. 29-1 ¶ 28; Doc. No. 31 ¶ 28.)   However, as grievance number 929650 was produced by SCI Frackville, and maintained as a part of Plaintiff's grievance records, it was clearly filed by prison officials at SCI Frackville.  (Doc. No. 29-1 ¶ 29; Doc. No. 31 ¶ 29.)  Grievance number 929650 was rejected because the "[i]ssues presented have already been addressed under other grievances."  (Doc. No. 29-1 ¶ 30; Doc. No. 31 ¶ 30.)[4]  Finally, the parties dispute whether Plaintiff attempted to appeal this rejection any further.  (Doc. No. 29-1 ¶ 31; Doc. No. 31 ¶ 31.)  The parties appear to agree, however, that no appeal records related to this grievance exist or have otherwise been produced.  (Id.)

---

[4]  Although Plaintiff largely concedes this factual averment, he disputes "that the reasons for the rejection of [g]rievance [number] 929650 were factual."  (Doc. No. 31 ¶ 30.)

### 2.      Parties' Arguments as to Exhaustion

The only grievance relevant to the Court's consideration is grievance number 929650.[5]   Defendant Dempsey acknowledges that the allegations in this grievance appear to be related, and the Court finds that they are related, to the allegations complained of in Plaintiff's amended complaint.  (Doc. No. 29 at 5; Doc. No. 29-17 (containing grievance number 929650, wherein Plaintiff specifically names Defendant Dempsey, sets forth various factual allegations concerning his suicide attempt at SCI Frackville on May 7, 2021, and asserts an Eighth Amendment claim for failure to provide adequate mental health treatment and failure to protect, for which he seeks monetary damages).)

---

[5]  In her brief in support of her motion for summary judgment, Defendant Dempsey contends that there are only three (3) grievances that are relevant for the Court's consideration and that they are grievance numbers 957739, 922003, and 929650. (Doc. No. 29 at 4-6.)  As to grievance number 957739, Defendant Dempsey argues that, while Plaintiff properly exhausted this grievance in accordance with the DOC's administrative remedy process, this grievance relates to events that allegedly took place at SCI Rockview (the institution to which Plaintiff was transferred following the events complained of in his amended complaint) and that this grievance does not refer to her either by name, title, or role.  (Id. at 4.)  And, as to grievance number 922003, Defendant Dempsey argues that, although she is mentioned in this grievance, it was filed months prior to the events complained of in Plaintiff's amended complaint and, thus, does not relate to this lawsuit.  (Id. at 4-5.)  While Plaintiff has filed a brief in opposition to Defendant Dempsey's motion for summary judgment, he does not address these arguments concerning grievance numbers 957739 or 922003.  (Doc. No. 30.)  Thus, based upon the parties' filings, the only grievance that is in dispute is grievance number 929650.  (Doc. No. 29 at 5-7; Doc. No. 30 at 2-4.)

Defendant Dempsey argues, however, that this grievance was rejected by the Facility Grievance Coordinator on June 1, 2021, and never appealed. (Doc. No. 29 at 5.)   Although Defendant Dempsey acknowledges Plaintiff's assertion in the amended complaint that SCI Frackville officials impeded his attempts to exhaust his administrative remedies concerning these matters, Defendant Dempsey argues that Plaintiff has not adduced sufficient facts in his amended complaint to show how he was prevented from exhausting his remedies. (Id. at 5-6.) Defendant Dempsey also argues that any such allegations are belied by evidence of "Plaintiff's prior and subsequent grievance filings and appeals," which demonstrate that administrative remedies were available to him. (Id. at 6.) Finally, Defendant Dempsey argues that Plaintiff has provided no evidence beyond the bare allegations of his complaint. (Id.) As a result, Defendant Dempsey argues that Plaintiff's claims asserted against her are barred by the PLRA. (Id. at 6-7.)

Plaintiff has sharply disputed Defendant Dempsey's argument by contending, inter alia, that he appealed grievance number 929650, after it was rejected on June 1, 2021, but that prison officials refused to file his appeal. (Doc. No. 30 at 2.)   In support of this contention, Plaintiff points to various allegations in his sworn verified amended complaint, as well as his sworn declaration that he filed in opposition to Defendant Dempsey's motion for summary judgment. (Id.)

The Court, having reviewed the parties' respective arguments, finds that Plaintiff has created a genuine dispute of material fact as to whether administrative remedies were unavailable to him. More specifically, Plaintiff has pointed to allegations in his sworn verified amended complaint that: (a) on or about May 13, 2021, when he was transferred from the hospital back to SCI Frackville, he was placed in a T-cell, where he was deprived of writing material and grievances "for security purposes" up until about May 17, 2021, when he was given one grievance and a flex pen (Doc. No. 13 ¶¶ 43-45); (b) on or about May 24, 2021, while Plaintiff was housed in the T-cell, he had an interaction with Defendant Kephart, who informed Plaintiff that "he was made aware of the grievance that Plaintiff had recently submitted against him[,]" that "he would ensure that [grievance number 929650] was the last grievance Plaintiff ever filed with SCI[ ]Frackville[,]" and that Plaintiff should not "bother filing an appeal" (id. ¶¶ 47-48); (c) on or about May 27, 2021, Plaintiff was transferred to SCI Rockview, where he ultimately "appealed" grievance number 929650 to the Facility Manager, "along with other grievances which w[ere] never filed" (id. ¶¶ 49-51); and, finally, (d) in June of 2021, Plaintiff sent a follow-up letter to "SCI[ ]Frackville" concerning the filing of this grievance and other grievances he filed, but that he never received a response and, so, he reached out to SCI Rockview's Facility Grievance Coordinator concerning the filing of these documents, but "nothing was filed" (id. ¶¶ 52-53). In addition to these

allegations, Plaintiff has also submitted a sworn declaration, wherein he states that, on or about June 10, 2021, he filed an appeal after he received the rejection for grievance number 929650.  (Doc. No. 32-2 at 1.)[6]

Thus, the Court, viewing Plaintiff's sworn verified amended complaint and sworn declaration in the light most favorable to Plaintiff, see M.S. by & through Hall, 969 F.3d at 125, concludes that Plaintiff has created a genuine dispute of material fact as to whether his attempts to exhaust his administrative remedies were thwarted by prison officials. See Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 443 (3d Cir. 2020) (explaining that a district court, in ruling on a motion for summary judgment, may consider a plaintiff's sworn verified complaint to the extent that it is based on "personal knowledge and set[s] out facts that would be admissible in evidence" (citations omitted)); Paladino v. Newsome, 885 F.3d 203, 209 (3d Cir. 2018) (explaining that "a single, non-conclusory affidavit . . . when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment" and that, "[t]his is true even where, as here, the information is self-serving" (citations and internal quotation marks omitted); Hernandez v. Donovan,

---

[6] Although Plaintiff has submitted a document entitled "Cash Slip[,]" wherein he makes a request that his inmate account be charged so that he can mail grievances and exhibits to SCI Frackville, this Cash Slip is dated May 28, 2021 (Doc. No. 32-1 at 1), and thus, was completed by Plaintiff before the Facility Grievance Coordinator rejected grievance number 929650 and before Plaintiff, allegedly, "mailed out" an appeal to SCI Frackville on June 10, 2021 (Doc. No. 30 at 3).

No. 10-cv-00726, 2013 WL 1246799, at *3 (D. Del. Mar. 25, 2013) (finding a genuine dispute of material fact with regard to exhaustion of administrative remedies, where prison officials submitted evidence that indicated (a) the prisoner-plaintiff had failed to file a grievance, and (b) the prisoner-plaintiff submitted his sworn affidavit that he had, in fact, filed a grievance).

Thus, for all of these reasons, the Court will deny Defendant Dempsey's motion for summary judgment. The Court will proceed, therefore, by addressing Defendant Dempsey's motion to dismiss.

### B. Defendant Dempsey's Motion to Dismiss

Defendant Dempsey argues that, even if Plaintiff exhausted his administrative remedies, his amended complaint should still be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state an Eighth Amendment claim upon which relief can be granted. (Doc. No. 17 at 6-7.) Plaintiff argues, however, that his amended complaint has set forth sufficient allegations to show that Defendant Dempsey (a) acted with deliberate indifference to his serious medical needs and (b) failed to prevent self-harm in violation of the Eighth Amendment. (Doc. No. 25 at 8-10.) The Court, having reviewed the parties' arguments, will deny Defendant Dempsey's motion to dismiss.

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual

punishments.'"  Glossip v. Gross, 576 U.S. 863, 876 (2015).  The United States Constitution "does not mandate comfortable prisons, . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]"  See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation and internal citation and quotation marks omitted).  In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Farmer, 511 U.S. at 832 (explaining that the Eighth Amendment imposes a duty on prison officials to, inter alia, ensure that prisoners receive adequate medical care (citations omitted)).  As explained by the United States Supreme Court, prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need."  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

"[T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences."  See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).  The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is

so obvious that a lay person would easily recognize the necessity for a doctor's attention." See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]" See Farmer, 511 U.S. at 837. This means that the prison official was aware of facts from which the inference could be drawn that an excessive risk of harm exists, and the prison official must also draw that inference. See id. The United States Court of Appeals for the Third Circuit has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197 (citation omitted).

Here, Defendant Dempsey argues that the amended complaint has failed to allege that she acted with deliberate indifference to his needs.[7] (Doc. No. 17 at 7.) The Court, however, is unpersuaded. In the amended complaint, Plaintiff alleges that, on March 8, 2021, he was assessed by Defendant Dempsey for a potential discharge from the PO cell. (Doc. No. 13 ¶ 16.) Plaintiff alleges that, as of that

---

[7] Defendant Dempsey's Rule 12(b)(6) argument focuses solely on the deliberate indifference component of an Eighth Amendment claim. (Doc. No. 17 at 7.) It does not assert any arguments as to whether Plaintiff's medical needs were objectively serious.

date, all defendants, including Defendant Dempsey, were aware of his vulnerability to self-harm and suicide because of his extensive history of self-harm, suicide attempts, and hospitalizations. (Id. ¶ 15.) In fact, Plaintiff alleges that Defendant Dempsey acknowledged that she was aware of Plaintiff's vulnerability to self-harm and suicide (id. ¶ 17), but explained that she needed to either discharge him from the PO cell or refer him to a mental health unit, because he had been in a PO cell for over seventy-two (72) hours, which is contrary to "policy and procedure" (id. ¶ 18). Plaintiff further alleges that he specifically informed Defendant Dempsey that he was having suicidal thoughts and that, if he were released back to the RHU, "he would most definitely find a way to kill himself." (Id. ¶ 19.) Plaintiff claims, however, that she authorized and/or supported his discharge anyway. (Id. ¶ 21.)

Viewing these factual allegations as true and in the light most favorable to Plaintiff, the Court concludes that the amended complaint has sufficiently alleged that Defendant Dempsey acted with deliberate indifference to his medical needs. In particular, the Court finds that there are allegations in the amended complaint upon which a reasonable inference can be made that Defendant Dempsey either intentionally denied Plaintiff's need for mental health treatment or delayed such treatment for a non-medical reason (i.e., for Plaintiff being in a PO cell for over seventy-two (72) hours). See Rouse, 182 F.3d at 197 (finding deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and

27

intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment" (citation omitted)).  As a result, the Court will deny Defendant Dempsey's motion to dismiss Plaintiff's Eight Amendment claim based upon deliberate indifference to his serious medical needs.[8]

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, the Court will deny Defendant Dempsey's motion to dismiss and/or for summary judgment in its entirety. (Doc. No. 16.)  An appropriate Order follows.

---

[8]   The Court notes that Plaintiff's amended complaint also asserts an Eighth Amendment claim based upon an allegation that Defendant Dempsey failed to prevent self-harm.  (Doc. No. 13 ¶ 62.)  Defendant Dempsey's instant motion has not, however, addressed this particular claim and, thus, the Court will refrain from doing so at this time.